**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 15-21594-MC-GOODMAN**

GREEN DEVELOPMENT CORPORATION
S.A. de C.V.,

       Applicant,

v.

ROBERTO ZAMORA,

       Respondent.

_____/

**ORDER GRANTING RESPONDENT'S MOTION TO QUASH**

Paul Harvey (1918 – 2009), a longtime radio broadcaster for ABC Radio Networks from the 1950s through the 1990s, was well known for his saying, "And now you know the *rest* of the story." In fact, his radio show was entitled "The Rest of the Story." Harvey's folksy phrase could be used to describe the position of Roberto Zamora, who filed a motion to quash a subpoena which Applicant Green Development Corporation S.A. obtained on an *ex parte* basis pursuant to 28 U.S.C. § 1782. That statute authorizes discovery from "a person" who "resides or is found in a district" when it is "for use in a foreign tribunal upon the application of an interested person."

For reasons outlined in greater detail below, the Undersigned grants Zamora's motion to quash because (1) the rationale proffered for the discovery is speculative, (2)

it is unclear how the Honduran Court would use the discovery if it were to be provided, (3) another district court previously denied a similar application, and (4) Green Development failed to timely advise this Court of a related proceeding where a similar discovery request was denied.

By way of additional summary, however, although Green Development has met Section 1782's jurisdictional requirements, the district court has broad discretion in deciding whether to grant Section 1782 discovery requests.  A district court in Maryland relied on these discretionary factors to deny Green Development's 1782 request and the Undersigned finds that several of these discretionary factors also apply here.

## I.      FACTUAL BACKGROUND

On April 28, 2015, Green Development petitioned this Court for an Order to permit discovery of information and documents from Respondent Zamora in connection with an appeal that remains pending before the *Corte Suprema de Justicia de Honduras* ("Honduran Supreme Court").[1] Green Development and several foreign banks are parties [ECF No. 9, p. 1]. As a predicate for the relief sought in this Court, Green Development made a number of definitive allegations concerning litigation misconduct in the Honduran Supreme Court.

---

[1]      The underlying procedural history pertaining to the pending appeal in Honduras is set forth in the Undersigned's Order of June 26, 2015 [ECF No. 9].

Specifically, it alleged that a publication implicating Green Development's CEO, its parent company, and a related subsidiary in drug trafficking, money laundering and international terrorism had been "surreptitiously and improperly **presented to the justices presiding over the appeal**."[2] [ECF No. 1, pp. 1-2] (emphasis supplied). The article, entitled, "Terrorism and Commercial Transportation: Use of Ships, Cargoes, Containers to Transport Terrorists and Materials," (the "Article") was authored by a non-party to this action, Michael McNicholas.[3] It appeared in a publication entitled *Maritime Security and Defense Against Terrorism* (F. Bora Uzer ed., IOS Press, 2012).

---

[2]     Green Development's stated basis for invoking the jurisdiction of this Court was variously stated in its *ex parte* application [ECF No. 1 ] as follows:

> Specifically, Green Development needs evidence to test the foundational statements that were surreptitiously and improperly presented to the justices presiding over the appeal. [*Id.*, at p. 1]

> Green Development needs to defend itself against the false statements illicitly published to the Honduran Supreme Court.  [*Id.*, at p. 2]

> Once the case reached Honduras' highest court, one of the defendant banks surreptitiously sent to the Justices presiding over the case a copy of an article that Michael McNicholas authored. [*Id.*, at p. 3].

> Another appeal followed to the Honduran Supreme Court.  There, one of the Bank Defendants illicitly and ex parte communicated the Article in a transparent effort to use the libelous publication to influence the proceeding. [*Id.*, at p. 4].

[3]     The Article has since been retracted by Mr. McNicholas, who acknowledged the article's falsity. [ECF No. 44].

Green Development identified Zamora as a discovery target in this proceeding, alleging that as "president and director of the parent company of one of the parties to the Honduran proceeding" and "the president of one of the Bank Defendants (Banco Lafise Honduras, S.A.)," he has "unique access to the critical evidence Green Development needs to defend itself against the false statements illicitly published to the Honduran Supreme Court." [ECF No. 1, p. 2]. Green Development sought this Court's assistance pursuant to 28 U.S.C. § 1782 because it claimed that Zamora was not a party to the Honduran appeal proceedings but was a resident in Miami.

On June 23, 2015, District Judge Jose E. Martinez referred the pending Application to the Undersigned. [ECF No. 8]. On June 25, 2015, the Undersigned entered an Order granting the Application authorizing the issuance of a subpoena and certain written discovery directed to Respondent. [ECF No. 9].

On September 9, 2015, Zamora filed a Motion to Quash, or in the Alternative, for an Order Staying All Discovery ("Motion to Quash"). [ECF No. 12]. Green Development filed its Memorandum of Law Opposing Respondent's Motion to Quash on November 12, 2015. [ECF No. 19]. Zamora then filed a Reply in Support of his Motion on December 10, 2015. [ECF No. 24]. A hearing was held before the Undersigned on March 22, 2016. Following the hearing, the Undersigned directed the parties to submit proposed Orders on Respondent's Motion. [ECF No. 39].

The Undersigned **grants** Zamora's motion to quash for the reasons set forth below. The Court also **vacates** its June 25, 2015 order [ECF No. 9] granting Green Development's *ex parte* Application.

## II.   THE RELATED PROCEEDINGS IN MARYLAND AND VIRGINIA

While its Application was pending before the Undersigned, Green Development filed two related requests for Section 1782 relief. Both requests sought discovery concerning the alleged distribution of the Article to the Honduran Supreme Court.  In a suit brought in the United States District Court for the District of Maryland, filed on May 5, 2015, Green Development sought discovery from the author of the Article, McNicholas. *See In Re Application of Green Development*, No. 1:15-cv-02985-WDQ (D. Md). It also filed a mirror image request for Section 1782 discovery from IOS Press, Inc., the publisher of the Article, in the District Court for the Eastern District of Virginia on May 5, 2015. *See In Re: Application of Green Development Corporation S.A. de C.V.*, No. 1:15-mc-00012 (E.D. Va.).

On October 1, 2015, United States Magistrate Judge Beth P. Gesner in the Maryland District Court entered her Report and Recommendation **denying** Green Development's Application seeking discovery from McNicholas ("Judge Gesner's R&R") [ECF No. 35-1]. Judge Gesner's R&R was issued more than a month before Green Development filed its November 12, 2015 Memorandum of Law Opposing Zamora's Motion to Quash in this Court [ECF No. 19]. Indeed, on November 9, 2015,

immediately before filing its Opposition in this Court, Green Development filed its Objections to Judge Gesner's R&R in the Maryland District Court [ECF No. 45]. Although the record in this case was sealed, as part of its submitted objections to Judge Gesner's R&R, which it filed in the Maryland District Court, Green Development attached this Court's sealed order *granting* its Application as to Respondent Zamora [ECF No. 45, "Exhibit K" to Objections]. Its Opposition memorandum filed with this Court however, failed to mention Judge Gesner's R&R or its Objections filed with the Maryland District Court.

Each of these pending related actions, parallel applications for Section 1782 relief, were not disclosed by Green Development before this Court's June 25, 2015 Order or at any time during the briefing process. Green Development also failed to disclose the entry of Judge Gesner's R&R at any time during the briefing process. The Court first learned of these related, parallel proceedings from Respondent Zamora's Reply in Support of his Motion to Quash on December 10, 2015 [ECF No. 24] and subsequently from Green Development's Notice of Pending, Refiled, or Similar Cases on December 23, 2015 [ECF No. 25].

## III.     APPLICABLE LEGAL PRINCIPLES AND ANALYSIS

### A.     An application for Section 1782 relief must have a good faith predicate.

The Eleventh Circuit instructs that a district court should deny an Application under Section 1782 if it is "made in bad faith, for the purpose of harassment, or

unreasonably seeks cumulative or irrelevant materials . . . in toto, just as it can if discovery was sought in bad faith in domestic litigation." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). The Undersigned will therefore determine whether, as alleged by Respondent Zamora, the Application was made in bad faith.

### 1.    *The Applicant's failure to timely disclose the related proceedings*

Southern District of Florida Local Rule 3.8 frames the obligations of Green Development (or any party) to alert the Court of related proceedings. There is no question that there is a "continuing duty" to "bring promptly to the attention of the Court and opposing counsel <u>the existence</u> of other actions or proceedings as described in Section 2.15.00 of the Court's Internal Operating Procedures, <u>as well as the existence</u> <u>of any similar actions or proceedings then pending before another court</u> or administrative agency." S.D. Fla. L.R. 3.8 (emphasis supplied). This duty was triggered here when, on May 5, 2015, Green Development filed the related actions in Virginia and Maryland seeking discovery for use in the same Honduran proceedings.  This duty was heightened on October 1, 2015, when Magistrate Judge Gesner entered a Report and Recommendation denying a similar discovery request. [ECF No. 35-1].

Quite apart from its continuing duty arising under Local Rule 3.8, counsel is bound by Federal Rule of Civil Procedure 11,[4] the Florida Rules of Professional Conduct, and a general duty of candor to the Court. *See Plant v. Doe*, 19 F. Supp. 2d 1316 (S.D. Fla. 1998) ("While the Court can certainly understand an attorney's desire to reach a resolution most favorable to his client, higher than the requirements of zealous advocacy are the obligations of truth, honesty, and ethical virtue."). *See also Byrne v. Nezhat*, 261 F.3d 1075, 1117 (11th Cir. 2001) (describing duty of candor to the Court "as that duty attendant to the attorney's role as an officer of the court with a continuing duty to inform the Court of any development which may conceivably affect the

---

[4]     Rule 11(b), provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

outcome of litigation. . . . Thus, attorneys are expected to bring directly before the Court all those conditions and circumstances which are relevant in a given case") (internal citation omitted).

The duty of candor is particularly heightened where, as here, *ex parte* proceedings are launched without the opposing party's knowledge or participation. Rule 4-3.3 of the Florida Rules of Professional Conduct provides in this regard:

> **(c) Ex Parte Proceedings.** In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Fla. Bar Rule 4–3.3.

The comments to that Rule further state:

> Ordinarily, an advocate has the limited responsibility of presenting 1 side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. **However, in an ex parte proceeding, such as an application for a temporary injunction, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.**

Fla. Bar Rule 4–3.3 (emphasis supplied).[5]

---

[5] At the hearing, Green Development's counsel conceded that her client is required to be "candid and truthful and honest and fair" when making an *ex parte* submission

Local Rule 3.8 and Florida Bar Rule 4-3.3 operate in tandem and require that counsel bringing multiple, related proceedings to advise the tribunals of each related proceeding. *See, e.g. In re Fisher Island Investments, Inc.*, 2014 WL 1343269 at *1 (Bankr. S.D. Fla. 2014) (noting the affirmative duty of disclosure and candor to the bankruptcy court in Florida and the New York court where adversary proceedings had been commenced).

In *International Beauty Exchange, Inc. v. Toney Dollar Kingdom, Inc.*, 199 F.R.D. 700 (S.D. Fla. 2001), the plaintiff sought an emergency *ex parte* seizure order, temporary restraining order, and damages. Following the entry of an Order granting that relief, the defendants moved to dismiss, transfer the pending action and vacate the seizure order. The defendants noted that the plaintiff and its current counsel had launched three related cases that were pending "between many of the same parties and regarding the same trademarks." *Id.* at 701. Counsel's failure to disclose the pendency of these related actions when it filed its original complaint, its amended complaint, or anytime thereafter was a "prima-facie violation of his duty of candor to the tribunal" and the court vacated its prior order. *Id.* at 701 n. 6, 702 (citing Florida Bar Rule 4-3.3(d)).

The circumstances presented here are similar.

---

because "a party always has an obligation to be candid with the Court." [ECF No. 41, p. 20].

Moreover, Rule 11 is applied with equal measure to the Green Development's Application for Section 1782 relief:

> Where a motion is made, Rule 11 gives the attorney's signature the effect of certifying that reasonable factual and legal support for it exists. A court has the right to expect that counsel will state the controlling law fairly and fully. **A lawyer must not misstate the law, fail to disclose adverse authority not disclosed by his opponent of which he knows or should know**, **or omit facts critical to the application of the rule of law relied on.**

*Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690-91 (M.D. Fla. 1992) (explaining these rules as "well-settled principles") (emphasis supplied).

Rule 11 prohibits parties from leveraging proceedings or utilizing them in a "meritless maneuver which attempts to gain some sort of foothold in [a] parallel litigation." *See Devereaux v. Colvin*, 844 F. Supp. 1508, 1510 (M.D. Fla. 1994) (Rule 11 sanctions imposed against plaintiff and its counsel where they were aware of, but failed to disclose, the existence of parallel litigation in another jurisdiction before seeking an *ex parte* temporary restraining order and subsequent preliminary injunction).

A Section 1782 applicant is no less bound by the same requirements of candor and transparency which apply to litigants seeking extraordinary or other forms of relief. Indeed, as the courts in this circuit have made clear, the touchtone of good faith also extends to Section 1782 proceedings. *See United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001); *In re Keeffe*, No. 15-mc-80651, 2015 U.S. Dist. LEXIS 117374 (S.D. Fla. Aug. 27, 2015). Green Development's selective, belated disclosures to this Court

11

about related proceedings are inconsistent with the good faith requirements imposed on Section 1782 applicants, especially those submitting requests on an *ex parte* basis.

In defense of its belated disclosures to this Court, Green Development contends it was constrained by orders sealing the files in Maryland and Virginia. Its counsel contends that they were unaware of the Local Rule 3.8 requirement to disclose the related proceedings well underway in both courts. Neither explanation is satisfactory. When it was strategically helpful, Green Development's counsel alerted the Maryland District Court of this Court's June 25, 2015 order granting its Application at a time when the court file in this matter was also under seal.

Green Development's actions do not reflect constraint regarding court files under seal. In its Opposition to Respondent's Motion to Quash, Green Development notified this Court that on May 29, 2015 its Application for Section 1782 relief in the Eastern District of Virginia had been granted: "[r]ecently, after issuance of an Order by the Federal District Court for the Eastern District of Virginia granting a Section 1782 application directed at it, the publisher of the McNicholas Article IOS Press BV released a statement disclaiming its role in the editorial and fact-checking process of that article." [ECF No. 19, p. 3]. This strategic, selective disclosure was inconsistent with its obligations to this Court and contradicts Green Development's purported concerns about a sealed court record.

The fact that court records in related proceedings are sealed does not preclude a litigant from revealing the mere pendency of those proceedings without disclosing anything more. Indeed, the purpose of sealing a court record from the public is to prevent that record from being used for illegitimate purposes (*see, e.g., Rossbach v. Rundle,* 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) (noting that "[a]mong the factors that courts have recognized as warranting restricting access to court records is the use of records for "illegitimate purposes [such] as to promote scandal")) or alternatively to promote the interests of justice or national security (*see, e.g., Fonseka v. AlfredHouse ElderCare, Inc.*, GJH-14-3498, 2015 WL 3457224, at *1 (D. Md. 2015) ([n]oting, "[t]he interests courts have found sufficiently compelling to justify sealing documents include "a defendant's right to a fair trial before an impartial jury," "protecting the privacy rights of trial participants such as victims or witnesses," and "risks to national security")).

Moreover, Green Development has not pinpointed any applicable authority which would have prohibited it from also filing under seal in this Court the sealed Applications and Orders from the above related cases.

Green Development now contends that it "inadvertently overlooked" the requirement to advise the Court of related matters under the local rule. " [ECF No. 51, p. 17]. At the hearing, counsel explained that "my understanding from my team is that they were **unaware of the rule** requiring disclosure" of the other case, which she said

13

means that the failure to disclose was "inadvertent." [ECF No. 41, p. 63] (emphasis added).

But the Undersigned notes that Green Development's memorandum [ECF No. 19] was filed by two attorneys who, according to the firm's website, have approximately 30 years of legal experience between them. Moreover, the same law firm is representing Green Development in the instant case and in the two other Section 1782 matters filed in other districts. So the Undersigned is not persuaded by the argument that Green Development's counsel was not aware of the local rule mandating disclosure.

In summary, Green Development's failure to timely disclose the pending related and parallel proceedings is problematic and does not generate convincing grounds to support its claim to have acted in good faith. Magistrate Judge Gesner's reasoning[6] in denying a closely-related application for Section 1782 relief was of more than passing interest to this Court. Her observations that a Honduran Court was obviously equipped to confront misconduct occurring before it has equal application to the Section 1782 relief applied for here. Judge Gesner signed the R&R on October 1, 2015, but Green

---

[6]    The Maryland district court affirmed Judge Gesner's R&R on February 18, 2016. [ECF No. 40-1]. Maryland District Judge Catherine Blake ruled that Magistrate Judge Gesner properly considered the *Intel* discretionary factors. She also agreed that "it is sheer speculation" that McNicholas was the source of the copy of the article purportedly provided to a judge or judges on the Honduran Supreme Court. In addition, the district court held that it is speculation whether the article "would influence the Honduran proceedings in any way." [*Id.*].

Development did not mention it in its November 12, 2015 opposition [ECF No. 19] to Zamora's motion to quash.

Judge Gesner's rejection of the Application because it failed to satisfy any of the *Intel* discretionary factors was known to Green Development's counsel as briefing in this matter proceeded in November and December of 2015. Judge Gesner's concern that the Honduran Court had not itself sought the information or would not be receptive to discovery obtained here should have been disclosed to this Court. Green Development could certainly have tried to distinguish Judge Gesner's ruling or otherwise argued that it was incorrect. But the decision to keep the developments hidden from this Court, rather than to disclose them and try to convince this Court to adopt a different view, was ill-advised.

In its proposed order [ECF No. 51, p. 17] denying the motion to quash, Green Development concedes that "arguably these omissions can be seen as error," but it also contends that "it is difficult to see how they can be characterized as bad faith, especially when Green Development corrected the error so soon thereafter." But the correction was not made until *after* the omission was flagged.

Green Development also argues that the applicable standard for determining bad faith is whether it "initially submitted" its application in bad faith. [ECF No. 51, p. 18]. To be sure, Green Development filed its Section 1782 application here in April 2015, before it filed the related actions in Maryland and Virginia and long before the

Maryland federal magistrate judge entered her adverse Report and Recommendation. But Local Rule 3.8 imposes a "continuing duty" to "promptly" advise the Court of other actions or proceedings. Thus, its later failure to advise this Court of the other proceedings, especially after advising other courts of this proceeding and especially after receiving an adverse ruling, is ultimately more significant than the fact that no other similar cases or rulings existed when it initially filed this Section 1782 discovery request.

Although the Undersigned is not affirmatively finding that Green Development acted in bad faith, I am likewise not specifically finding that it acted in good faith, either. Instead, I view the failures to disclose as strategic (and not the result of experienced counsel being unaware of the disclosure requirement) and a factor to be considered in the discretionary assessment of the *Intel* factors.

### 2.   *The undisclosed speculation inherent in the Section 1782 application*

It is also now apparent to this Court that Green Development's Application to this Court was speculative.

In the Motion to Quash, Respondent Zamora noted that the Application was hardly consistent in identifying the party purportedly responsible for the Article's alleged distribution.  Respondent noted that the identity of the distributor of the Article seemed to shift from page to page of the Application. The Application asserted that "one of the parties appearing against Green Development in the Honduran Supreme

16

Court has furtively and surreptitiously introduced a copy of [the Article at issue]." [ECF No. 1, p. 2]. A mere six pages later, the Application identified "the Bank Defendants" as responsible. [*Id.*, at p. 7]. The Application offered no explanation for its final claim that Respondent Zamora is responsible -- "Zamora holds the critical evidence." [ECF No. 3, p. 11]. Green Development's Opposition submissions did nothing to clarify, explain or fortify its apparent speculation.

While its allegations about the identity of the distributor of the Article changed, the Application expressed no doubt that the Article had in fact been received by the Honduran Supreme Court and the Justices of that court. However, the sworn declaration of Luis Martinez, Green Development's Honduran legal counsel, submitted as part of its Opposition to the Motion to Quash [ECF No. 19- 4], ultimately painted a less-certain portrait. There, Martinez recounted an anonymous phone call he had received. Given the Martinez declaration, any allegation about illicit activity should in fairness also have explained in summary fashion what Martinez set forth in his declaration:

> In early December of 2014 I received a call from an anonymous informant stating that he had received a copy of an article titled "Terrorism and Commercial Transportation:  Use of Ships, Cargoes, Containers to Transport Terrorists and Materials.
>
> He stated that he was a clerk in the Corte Suprema de Justicia de Honduras and that he himself had received a copy of the article in the mail.

When asked about his identity, the anonymous informant abruptly hung up.

[ECF No. 19-4].

The Martinez declaration makes clear that Green Development's allegations of litigation misconduct before a foreign court rested on nothing more than speculation. On this basis alone, the Motion to Quash is granted and this Court's June 25, 2015 Order is vacated. *United Kingdom v. United States*, 238 F.3d at 1319; *In re Keeffe*, 2015 U.S. Dist. LEXIS 117374.

### B.      The impact of the *Intel* factors

The parties do not dispute that the *prima facie* requirements set forth in 28 U.S.C. § 1782(a) are met in this case. However, under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the following discretionary factors must also be considered by this Court:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

*Intel Corp.*, 542 U.S. 241, 255.   *See also In re Appl. of Inversiones y Gasolinera Petroleos Valenzuela, S. DER.L*, No. 08–20378–MC, 2011 WL 181311, at *13 (S.D. Fla. Jan. 19, 2011).

18

The first *Intel* factor plainly cuts against Green Development's position. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence[.]" *Intel*, 542 U.S. 241, 263. Respondent Zamora contends that he is "legal representative" of Banco Lafise who is subject to the jurisdiction of the Honduran courts [ECF No. 19-2]. He has also proffered evidence demonstrating that he is a named party to the pending proceedings with Green Development. [ECF No. 24-1].

The second *Intel* factor also undermines Green Development's position. Under *Intel,* the Court must determine "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*, 542 U.S. 241, 255. The Undersigned concurs with Magistrate Judge Gesner, who rejected Green Development's Application in the Maryland District Court for the reasons set forth below:

> Although "Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal," whether a petitioner has sought the intended discovery from the foreign tribunal does have some bearing on the foreign court's likely receptivity to American judicial assistance. *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010).

> The Honduran Supreme Court has not requested this Court's assistance in obtaining any information for use in the proceedings before it. There is no evidence that Petitioner has indicated to the Honduran court its purported need for the information sought. Nor is there any reason to believe that the Honduran court would be receptive to the introduction of new information during its appellate review of Petitioner's case pending before it. Thus, while this Court might hope that Honduran courts would be receptive to American judicial assistance in general, Petitioner presents no reason to believe that the Honduran Supreme Court would be receptive to the information sought in this case.

[ECF No. 35, p. 6].[7]

Under the third *Intel* factor, the Court must determine "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. 241, 255. This Court agrees with Magistrate Judge Gesner on this point:

> The peculiar circumstances giving rise to Petitioner's motion – the allegedly wrongful, ex parte delivery of Mr. McNicholas' article to several justices of the Honduran Supreme Court – leave it unclear whether Petitioner's intended discovery constitutes an attempt to "circumvent foreign proof gathering restrictions or other policies." *Intel*, 542 U.S. at 244-245. While there are presumably Honduran legal mechanisms for seeking sanctions or relief from such improper

---

[7]   At the hearing, Green Development did not know how many justices are on the Honduran Supreme Court, how many justices received the article, whether any of the justices (as opposed to a clerk) actually received the article, whether the clerk gave the article to any of the justices, whether the clerk who received the anonymous call was a law clerk or a clerk in the Court's administrative office, or whether the Honduran Supreme Court justices even have individual law clerks. She also described as irrelevant the fact that the entire makeup of the Honduran Supreme Court has turned over since the application was filed. [ECF No. 41, pp. 17-25]. The Undersigned does not agree, as discussed later in this Order.

conduct, Petitioner has neither identified them nor indicated how its intended discovery might be used in the foreign proceeding. What Petitioner purportedly seeks is to "test the factual sufficiency of statements found in the Article," so that it may rebut before the Court the harmful allegations made therein." . . . Though this Court cannot conclude whether this tactic is a concealed attempt to circumvent Honduran procedural norms, this approach does at least give cause for some circumspection.

[ECF No. 35, pp. 7-8 of R&R].

Green Development did not provide much in the way of additional explanation at the hearing before me. The Undersigned repeatedly asked *how* Green Development intended to submit new evidence to an appellate court reviewing a money judgment. Counsel did not know the specifics and explained that "we would be submitting it through Honduran counsel directly to the Honduran Supreme Court." However, she also noted that the Court "could very well deny the evidence" and "decide not to admit it." [ECF No. 41, p. 10].

Respondent's Motion to Quash is supported by the declaration of a Honduran law expert, Professor Jose Rogelio Penagos, a Honduran lawyer and law professor. In sum, Professor Penagos concluded that under Honduran law, the Honduran Supreme Court was fully able to address litigation misconduct allegedly committed by parties before it. In fact, as Professor Penagos notes, Respondent Zamora is a Legal Representative of Lafise Bank and a named party to the Honduran proceeding, fully subject to that foreign tribunal's jurisdiction. In short, Respondent is a "participant" to that proceeding. Under *Intel*, this is a discretionary factor militating against the Green

Development's pursuit of Section 1782 relief. Professor Penagos therefore concludes that the foreign tribunal (i.e., the Honduran Supreme Court) is as capable of dealing with litigation misconduct before it, just like courts in this country.

Finally, Professor Penagos concludes, because the Honduran Supreme Court had not authorized Green Development's discovery initiative here, none of the materials or sworn testimony sought by Green Development in this Court would be admissible in Honduras. Thus, Professor Penagos concludes the proceedings here will yield nothing that will be of use to the foreign tribunal.

Green Development and its Honduran law expert contest many of Professor Penagos' conclusions. However, whether and to what extent the Honduran Supreme Court has jurisdiction and authority to sanction a "participant" like Zamora (a named party to that litigation) is not credibly disputed. There is also no dispute that Green Development took no steps to alert the Honduran Supreme Court to the allegations which it has made here. Therefore, this Court is not inclined to speculate on the alleged limitations of a foreign tribunal's authority to act where the Applicant itself has refrained from presenting the issue to that Court.

C.   **The discovery appears potentially illogical**

This Court also notes that the composition of the Honduran Supreme Court has entirely changed since the commencement of the appellate proceedings in Honduras and the alleged distribution of the Article to a previous panel (or to an individual

justice) of that Court. A new panel of judges has been in place since February 2016. [ECF No. 33]. Green Development does not dispute the current composition of the Honduran Supreme Court. There is nothing before this Court to suggest that this *new* panel of Honduran justices is even *aware* of the Article.

By seeking to obtain discovery intended to address the illicit dissemination of an allegedly defamatory publication, the result requested by Green Development (in its opposition to the motion to quash) would be to republish the same allegedly offending Article to an entirely different judicial panel. This appears counter-productive. The discovery requested by Green Development, if obtained and successfully submitted to the Honduran Supreme Court, would, in effect, republish an allegedly defamatory publication when the current justices might not even be aware of the purportedly false information. Thus, Green Development's position could easily promote the same harm which the Application claimed it was seeking to redress.

Contrary to Green Development's position at the hearing, this is hardly irrelevant. Green Development says it wants to make certain that the Honduran Supreme Court considering the appeal is not tainted or influenced by the false information (which the author has now recanted). But if the current justices do not know of the information, then how is the fundamental purpose of fairness promoted by submitting new evidence which could create the very taint which Green Development

seeks to avoid? The Undersigned is at a loss to understand the logic of Green Development's position.

## IV.    CONCLUSION

For the reasons set forth above, the Undersigned hereby **grants** Zamora's Motion to Quash and **vacates** its June 25, 2015 order [ECF No. 9] granting Green Development's *ex parte* application for Section 1782 discovery.

**DONE AND ORDERED** in Chambers, in Miami, Florida, May 10, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsel of record